# Exhibit A

# Complaint

Karen Freedman
249 South 700 East Apt 58
Salt Lake City UT 84102
khfreedman@gmail.com
Phone (801) 860 6039

FILED DISTRICT COURT
Third Judicial District

DEC 6 / 2018

SALT LAKE COUNTY
By_____
                    Deputy Clerk

| | |
|---|---|
| KAREN FREEDMAN,<br><br>Plaintiff,<br>vs.<br><br>UNIVERSITY OF UTAH,<br><br>Defendant | COMPLAINT AGAINST UNIVERSITY OF UTAH<br><br><br>SALT LAKE CITY, UTAH<br>THIRD DISTRICT COURT<br>180909160<br>Faust |

## (I) BRIEF STATEMENT OF FACTS

1. SUMMARY OF EVENTS PRECEDING FINAL WRITTEN WARNING ISSUED ON AUGUST 9 2016

I was employed at the UNIVERSITY OF UTAH HSC DNA/PEPTIDE CORE Facility from **FEBRUARY 1 2009** until **OCTOBER 19 2016**. My job title was Laboratory Technician until **JULY 2013** and Senior Laboratory Specialist until **OCTOBER 19 2016**. The quality of my work for customers who utilized our facility for their DNA synthesis needs was consistently excellent. I never received any complaints or negative evaluations from students, staff or faculty of the university/research park. Customers consistently praised my work. I provided technical expertise and leadership, and performed most of the daily tasks and chores essential in keeping our facility operational. I hardly ever took time off. In fact, I left the University with the majority of my accrued vacation and sick days unused.

Throughout the duration of my employment I was subjected to severe bullying. I was sexually assaulted by a coworker and subjected to unsafe work conditions in the laboratory.

Eventually, my employment was simply terminated as retaliation for objecting to unsafe work conditions.

I appealed this termination according to University Policy.

However, I was not afforded due process as guaranteed by the Fourteenth Amendment to the US Constitution.

<u>This constitutes the basis of my claim against the University of Utah.</u>

I was sexually assaulted by a coworker named Scott Endicott from the beginning of my employment until on or around **MARCH 23 2012**. I reported this to my supervisor, Dr. Mike Hanson on or around **MARCH 23 2012**. I was also stalked and harassed by Endicott in **2016**. To my knowledge, a follow-up investigation by the University of Utah's OEO office did not occur as is required by University policy. I was never interviewed or asked to provide a statement regarding these events by any University office.

However, while under oath on **AUGUST 14 2017**, Dr. John Phillips, Hanson's direct supervisor, repeatedly stated that a University Investigation of my allegations against Endicott had occurred. Therefore, this was a one-sided investigation since I was not interviewed by University HR or any University Office regarding my allegations.

I was subjected to unsafe and unlawful working conditions during all the years of my employment. Volatile organic chemicals (VOCs) were utilized in the laboratory not in accordance with OSHA regulations regarding these chemicals.

- Commercial-level quantities of the chemical Methylene Chloride were routinely handled outside of the chemical fume hood without necessary precautions.

- Misinformation regarding usage of Methylene Chloride in the laboratory was intentionally provided to the University Environmental Health Service (EHS) by Hanson.

- Training was not provided regarding emergency spill situations for toxic chemicals. Spill kit was not present in laboratory.

- Sufficient ventilation was not provided in the laboratory. Only one chemical fume hood was present in the laboratory. Notably, this hood had been red-tagged as non-operative by University EHS throughout **JULY 2016,** and a follow up repair did not occur as required by EHS regulations.

- A Commercial DNA synthesis machine was purchased in **OCTOBER 2015** and operated in the laboratory not in compliance with OSHA regulations. Emissions were often released directly from this machine into the laboratory creating severe inhalation exposure to employees.

-  Breakroom/place to eat/lobby area, and a clean-water supply were not present in building. Employees ate in laboratory in areas containing toxic chemicals including Methylene Chloride.

I was forced to work under these conditions while pregnant and experienced a miscarriage on **DECEMBER 30 2015.** While I was still on University approved FMLA leave, I was presented with a memorandum on **JANUARY 12 2016** threatening termination of my employment because I was too ill to perform work on **DECEMBER 29 2015**.

On **FRIDAY JULY 29 2016** I met with John Phillips, Hanson's direct supervisor, in order to discuss concerns over continued chemical safety violations in the lab. I discussed the chemical fume hood, red-tagged by EHS for almost 4 weeks, which had still not been repaired.

Following this meeting, on the evening of **JULY 29 2016**, Phillips sent an email to laboratory employees, including Hanson, providing guidelines on future handling of lab safety issues.

On **MONDAY AUGUST 1 2016**, Hanson met with Phillips and Brenda Smith, the Cores secretary, in order to discuss and formalize negative action against my employment.

**AUGUST 3-8**, Hanson left town on family business.

2. SUMMARY OF EVENTS FROM AUGUST 9 2016

On **AUGUST 9 2016** a Final Written Warning (FWW) was issued to me by Hanson as retaliation for reporting safety concerns to University management (John Phillips). This FWW was a fabrication of events preceding its issuance.

Prior to the action taken against me on **AUGUST 9 2016**, no investigation by University officials regarding my allegations of safety violations in the laboratory was conducted.

On **AUGUST 21 2016**, I submitted a Step II Appeal of the FWW to the University in accordance with University Policy. Prior to writing the Appeal, I emailed Phillips asking for written clarification of a portion of the FWW which contained intentionally ambiguous language. I did not receive a response from Phillips. In my Appeal, I was therefore unable to address this intentionally ambiguous portion of the FWW.

On **SEPTEMBER 22 2016** while I was at home on University approved FMLA leave, the University placed me on forced Administrative Leave effective immediately at the conclusion of the FMLA. I was barred from returning to work although permitted by my physician. I was informed that Campus Security would be called if I attempted to return to work. I was presented with a settlement offer which gave me the opportunity of either accepting a resignation, or the University pursuing further action against my employment.

On **OCTOBER 13 2016** I requested a copy of my Personnel File from University HR, but was only provided with selected documents from my File.

On **OCTOBER 18 2016** while I was still on Administrative Leave, my employment with the University was TERMINATED effective **OCTOBER 19 2016.** My Step II Appeal to the FWW had not yet been reviewed, nor had I returned to work or been on campus since **AUGUST 9 2016**.

On **DECEMBER 15 2016** after my employment had already been terminated, I was notified by the University that my Step II Appeal to the FWW would finally be reviewed.

The Appeal was referred to a "higher-level supervisor" on **JANUARY 27 2017**. This individual was Dr. Andrew Weyrich, Phillip's direct supervisor and colleague in the Department of Pathology.

On **MARCH 10 2017** I was notified by the University that Weyrich upheld the FWW.

On **APRIL 7 2017** the University notified me (through my attorneys at the time) of a Step III Hearing scheduled for **MAY 16 2017** to appeal the termination of my employment.

The Step III Hearing was rescheduled due to scheduling and other issues and actually occurred on **AUGUST 14 2017**.

<u>3. SUMMARY OF HEARING AUGUST 14 2017.</u>

The hearing was not composed of <u>objective</u> University staff as indicated in University Policy, and violated my Fourteenth Amendment rights to a hearing before an Impartial Tribunal, my right to cross-examine witnesses, and to speak on my own behalf.

- Hearing Chairperson: Jolie Coleman. Respondent: John Phillips. Witnesses: Mike Hanson, Brenda Smith.

- Under oath, the two Witnesses and Phillips repeatedly committed perjury as evidenced by repeated contradictions of their own statements.

- Phillips performed the direct examination of Hanson and Smith. During Smith's testimony, Phillips himself provided answers, cut off Smith when her responses were not to Phillips liking, and at one point told Smith how to respond.

- I was not allowed to cross-examine witness Smith. When I attempted to do so, Phillips and Coleman (Chairperson) answered for her and did not permit her to respond to me.

- At one point during the proceedings, I was asked a question by a hearing Committee Member, but not permitted to answer. I attempted to respond to the question, but was cut off by witness Smith, and was not permitted to finish my response by Coleman.

- I was treated by Coleman in a manner which would be construed as rude, demeaning and disrespectful by any reasonable person, although I was respectful at all times during the Hearing.

- I was made to feel afraid of negative consequences for myself and for any potential witness testifying or acting on my behalf, prior to or during the Hearing. Namely, on **SEPTEMBER 22 2016** while I was on FMLA leave, Phillips sent an email stating in part *"Karen, what concerns me the most is the pattern of continued severe disruption. After receiving your Final Written Warning, I received reports of you contacting former HSC Cores employees to discuss your situation. This is not appropriate and has also wasted these individuals' time"*.

On **AUGUST 21 2017,** the Hearing Committee recommended to uphold the FWW and Termination of my Employment.

On **AUGUST 25 2017**, Rick D. Smith, Senior Director, University of Utah Human Resources Management upheld the Committee recommendation. This ended the University Grievance Process.

### (II) NATURE OF CLAIM ASSERTED

The Fourteenth Amendment guarantees due process of law by any State Agency to any person within its jurisdiction.

**The University of Utah did not afford me substantive due process: my employment was terminated for Arbitrary and Capricious reasons.**

1. During my testimony on August 14, I provided statements from customers regarding the quality of my work. Phillips testified under oath that my work performance was never an issue, and that I possessed a unique skillset. The above-average and excellent services which I provided to the U community were certainly relevant factors in my continued employment, but were not taken into consideration.

2. In my appeals and OEO complaint I provided accurate detailed accounts of events which occurred through August 9 2016, in contrast to Hanson's fabricated narrative. However, every written response by the University, including the final recommendation of the hearing committee, only referenced Hanson's version of events. There was absolutely no reference to my side of things. There was not an attempt to reconcile our differing versions of events or even to discount my statements. My written and verbal testimony were at most superficially considered by the University.

    The University did not perform any investigation regarding the workplace safety violations which I alleged. The University was apparently uninterested in the safety of its students/staff. It was more concerned with fabricating reasons for terminating my employment, than in conducting a neutral fact-finding mission. <u>Therefore, my Fourteenth Amendment due process rights were violated.</u>

3. I had never received any negative performance reviews prior to receiving the Memo on January 12 2016 and the FWW on August 9 2016. The timing of both of these strongly suggest preemptive retaliation/ retaliation for concerns over workplace safety. Preemptive retaliation is against State and Federal Law.

    - The Memo was delivered on January 12 2016 while I was on FMLA leave. In this Memo, I was threatened with termination of my employment for being too ill to work on December 29 2015. On the night of December 29 2015 I experienced a miscarriage, and was subsequently granted FMLA. On December 29 2015, I was verbally threatened with loss of my employment and called obscenities by Hanson. Additionally, the workplace conditions on December 29 were particularly severe, and violated laws regarding inhalation exposure to toxic chemicals.

    - Similarly, the FWW was delivered shortly after I brought workplace safety concerns to Hanson's supervisor, John Phillips. My discussion with Phillips occurred on July 29 2016 and the FWW was delivered on August 9 immediately upon Hanson's return from a vacation.

    Therefore, the timing of these 2 documents suggestive of retaliation was a relevant factor, but was not taken into consideration by higher-level supervisors who upheld the termination of my employment.

4. *"Contacting former HSC Core employees to discuss your situation"* was defined as *"severe disruption"* by Phillips on Sept 22 2016 and used as a basis for termination of my employment. This statement is especially concerning since *"former HSC Core employees"* were no longer affiliated with the University of Utah. It also discredits the veracity of Phillips' and Hanson's other accusations against me and lends credence to my assertion of Arbitrary and Capricious reasons behind the decision to terminate my employment.

**I was not afforded procedural due process during Grievance.**

1. I was not permitted to understand fully the charges against me written in the FWW. I was therefore unable to comprehensively address these accusations during the Grievance process. Specifically, on August 12 2016, I requested clarification through email to Phillips of a very ambiguously written paragraph of the FWW. I never received a response from Phillips or any University representative.

This statement is from a relevant 14th Amendment legal ruling: *"The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."* Therefore, a notice which fails to adequately explain the basis of an action (the FWW) is a <u>violation of Fourteenth Amendment rights to due process.</u>

2. On August 21 2016 I submitted an Appeal To FWW in a timely manner. However, negative action against my employment proceeded on September 22 2016 <u>before</u> the Appeal had been reviewed. On this date, I received NOTICE OF A PRE-DISCIPLINARY HEARING [1] AND SETTLEMENT OFFER. During the period between submission of my Appeal and September 22 2016, I was at home on FMLA leave, and therefore nothing occurred which justified this escalation of adverse action against my employment.

   On October 18 2016, my employment was terminated effective October 19, before my Appeal To FWW was reviewed. I had not returned to work nor engaged or communicated with University employees since September 22 2016.

   <u>My Fourteenth Amendment right to a fair and impartial Grievance procedure of my termination was therefore violated when the University proceeded directly to a Pre-Disciplinary hearing and then to Termination of my Employment without the proper intermediary steps or legitimate cause for doing so.</u>

3. On October 13 2016 I requested copies of my personnel file. Instead I was sent material dating from when I was an undergraduate employee. I was not granted access to relevant portions of my file which would have aided me in my defense.

4. On March 9 2017 my Step II Appeal To Final Written Warning was reviewed by Andrew Weyrich. According to University Policy 5-203, the Grievance of a Final Written Warning is *"conducted by the appropriate higher-level supervisor or manager who was <u>not involved</u> in the actions being grieved"*. Since Weyrich is Phillips' direct supervisor and professional colleague, it is reasonable to assume that

---

[1] On the advice of my attorneys, we submitted a written statement in lieu of participating in the hearing.

Weyrich would have been involved at least to some extent in Phillips' prior decision to terminate my employment. In fact, the following is a statement from the HSC Cores Website: *"Dr. Weyrich and Dr. Phillips administer the core facilities... overseen by a faculty oversight committee"*.
<u>The University did not follow its own policy during the grievance process. My Fourteenth Amendment rights to a Fair and Impartial Grievance were violated.</u>

5. According to sworn testimony provided by Phillips on August 14 2017, an "investigation" was conducted by the University regarding my allegations against Endicott. However, I was never interviewed or contacted by any University representative regarding these allegations. <u>A one-sided investigation in which Endicott was interviewed, but I was not, clearly violates my right to Impartial Proceedings.</u>

6. On August 14 2017 a Hearing was held at the University of Utah HR offices to appeal the Termination of my Employment on October 18 2016.
According to University Policy 5-203 the hearing Committee is to be composed of an "objective panel of Staff Members". An audio recording of this hearing was provided to me at the conclusion of the proceedings.

- Hearing Chairperson: Jolie Coleman. Respondent: John Phillips. Witnesses: Mike Hanson, Brenda Smith.

- Under oath, the two Witnesses and Phillips repeatedly committed perjury as evidenced by repeated contradictions of their own statements.

- Phillips performed the direct examination of Hanson and Smith. During Smith's testimony, Phillips coached Smith on what to say, cut off Smith when her responses were not to Phillips liking, and at one point changed Smith's answer and told Smith how to respond.

- I was not allowed to cross-examine witness Smith. When I attempted to do so, Phillips and Coleman (Chairperson) answered for her and did not permit her to respond to me.

- At one point during the proceedings, I was asked a question by a hearing Committee Member, but not permitted to answer. I attempted to respond to the question, but was cut off by witness Smith, and was not permitted to finish my response by Coleman.

- I was treated by Coleman in a manner which would be construed as rude, demeaning and disrespectful by any reasonable person, although I was respectful at all times during the Hearing.

- I was made to feel afraid of negative consequences for myself and for any potential witness testifying or acting on my behalf, prior to or during the Hearing. Namely, on **SEPTEMBER 22 2016** Phillips justified continued adverse action against my employment in an email which states: *"Karen, what concerns me the most is the pattern of continued severe disruption. After receiving your Final Written Warning, I received reports of you contacting former HSC Cores employees to discuss your situation. This is not appropriate and has also wasted these individuals' time".*

- Written "testimony" from Mandy Britt, an HR representative, alleges that I called her a "bitch" on August 9 2016 when I was given the FWW. This statement is patently untrue. I never called any university employee any name. Ms. Britt's statement was used as basis for termination of my employment. However, Britt was notably absent from the Hearing. I was therefore unable to confront or cross-examine Britt regarding her accusations against me.

The Hearing Committee was not composed of Objective University Staff. <u>It was a kangaroo court. My Fourteenth Amendment rights to a hearing before an Impartial Tribunal with a neutral arbiter, which include the ability to cross-examine witnesses, speak on my own behalf, and present witnesses were violated.</u>

## (III) DAMAGES INCURRED BY CLAIMANT SO FAR AS THEY ARE KNOWN

Under SECTION 1983 of the 1871 CIVIL RIGHTS ACT the UNIVERSITY OF UTAH is liable to me for damages incurred through their actions which caused deprivation of my Fourteen Amendment rights secured by the US Constitution.

I am claiming compensation in the amount of $500,000 for lost wages, backpay, damage to my reputation and career, related medical expenses including health insurance premiums and deductibles, and psychological harm including PTSD. Documented scientific research on effects of severe workplace bullying, such as what I was subjected to, has unequivocally established a link between workplace bullying and long-term psychological effects on the victim including PTSD.

I am claiming compensation in the amount of $700,000 for emotional pain, suffering, psychological anguish and torture resulting from the defendants' actions.

My total claim is for $1,200,000.

I certify that everything I have written here is true and accurate.

Karen Freedman

(signed) *Karen Freedman*

*Karen Freedman*

Dated: December __6__ 2018

# Cover Sheet for Civil Actions

**Interpretation.** If you do not speak or understand English, contact the court at least 3 days before the hearing or mediation, and an interpreter will be provided.

**Interpretación.** Si usted no habla o entiende el Inglés contacte al tribunal por lo menos 3 días antes de la audiencia o mediación y le proveerán un intérprete.

**Plaintiff/Petitioner** (First)

Name: Karen Freedman
Address: 249 S. 700 E. #58
City, State, Zip: SLC UT 84102
Email: khfreedman@gmail.com
Phone: (blank)

**First Plaintiff/Petitioner's Attorney***

Name: Pro Se
Bar Number: (blank)

**Defendant/Respondent** (First)

Name: University of Utah
Address: 201 S. Presidents Circle
City, State, Zip: Salt Lake City, Utah 84112
Phone: (801) 581-7200
Email: (blank)

**First Defendant/Respondent's Attorney***

Name: (blank)
Bar Number: (blank)

**Plaintiff/Petitioner** (Second)

Name: (blank)
Address: (blank)
City, State, Zip: (blank)
Phone: (blank)
Email: (blank)

**Second Plaintiff/Petitioner's Attorney***

Name: (blank)
Bar Number: (blank)

**Defendant/Respondent** (Second)

Name: (blank)
Address: (blank)
City, State, Zip: (blank)
Phone: (blank)
Email: (blank)

**Second Defendant/Respondent's Attorney***

Name: (blank)
Bar Number: (blank)

*Attorney mailing and email addresses provided by Utah State Bar.

**Total Claim for Damages** $1,200,000   **Jury Demand** ☐ Yes ☐ No   $250 ☐ Jury Demand

**Schedule of Fees: §78a-2-301** (Choose ☒ all that apply. See Page 2 for fees for claims other than claims for damages.)

**PLEASE CHOOSE ONE:**
- ☐ No monetary damages are requested (URCP 26: Tier 2)
- ☐ Damages requested are $50,000 or less (URCP 26: Tier 1)
- ☐ Damages requested are more than $50,000 and less than $300,000 (URCP 26: Tier 2)
- ☒ Damages requested are $300,000 or more (URCP 26: Tier 3)
- ☐ Damages are unspecified. Circle one: Tier 1   Tier 2   Tier 3
- ☐ This case is exempt from URCP 26. (E)

$180 ☐ Damages $10,000 & over
— — COMPLAINT OR INTERPLEADER — —
$75 ☐ Damages $2000 or less
$185 ☐ Damages $2001 - $9999
$360 ☒ Damages $10,000 & over
$360 ☐ Damages Unspecified
— — COUNTERCLAIM, CROSS CLAIM, THIRD PARTY CLAIM, OR INTERVENTION — —
$55 ☐ Damages $2000 or less
$150 ☐ Damages $2001 - $9999
$155 ☐ Damages $10,000 & over

— — MOTION TO RENEW JUDGMENT — —
$37.50 ☐ Damages $2000 or less
$92.50 ☐ Damages $2001 - $9,999

**Choose ☒ One**

| Fee | | Case Type |
|---|---|---|
| | | ————— **APPEALS** ————— |
| $360 | ☐ | Administrative Agency Review |
| Sch | ☐ | Tax Court (Appeal of Tax Commission Decision) Court: Refer to Clerk of Court upon filing. |
| $225 | ☐ | Civil (78A-2-301(1)(h)) (E) |
| $225 | ☐ | Small Claims Trial De Novo (E) |
| | | ————— **GENERAL CIVIL** ————— |
| Sch | ☑ | Civil Rights |
| $0 | ☐ | Civil Stalking (E) |
| $360 | ☐ | Condemnation/Eminent Domain |
| Sch | ☐ | Contracts |
| Sch | ☐ | Contract: Employment Discrimination |
| Sch | ☐ | Contract: Fraud |
| Sch | ☐ | Debt Collection |
| Sch | ☐ | Eviction/Forcible Entry and Detainer (E) |
| $360 | ☐ | Extraordinary Relief/Writs |
| $360 | ☐ | Forfeiture of Property (E) |
| Sch | ☐ | Interpleader |
| Sch | ☐ | Lien/Mortgage Foreclosure |
| Sch | ☐ | Miscellaneous Civil |
| $360 | ☐ | Post Conviction Relief: Capital (E) |
| $360 | ☐ | Post Conviction Relief: Non-capital (E) |
| Sch | ☐ | Property Rights |
| $360 | ☐ | Registry Removal (Gun/White Collar) |
| Sch | ☐ | Sexual Harassment |
| Sch | ☐ | Water Rights |
| $360 | ☐ | Wrongful Lien |
| Sch | ☐ | Wrongful Termination |
| | | ————— **TORTS** ————— |
| Sch | ☐ | Automobile Tort |
| Sch | ☐ | Intentional Tort |
| Sch | ☐ | Malpractice-Medical Tort |
| Sch | ☐ | Malpractice-Legal Tort; Other |
| Sch | ☐ | Premises Liability |
| Sch | ☐ | Asbestos |
| Sch | ☐ | Product Liability (NOT Asbestos) |
| Sch | ☐ | Slander/Libel/Defamation |
| | | ————— **DOMESTIC RELATIONS** ————— |
| $0 | ☐ | Protective Orders (E) |
| $310 | ☐ | Marriage Adjudication (T2) |
| $310 | ☐ | Custody/Visitation/Support (T2) |
| $310 | ☐ | Divorce/Annulment (T2) |
| | ☐ | Check if child support, custody or parent-time will be part of decree |
| | ☐ | Check if Temporary Separation filed |
| $8 | ☐ | Vital Statistics §26-2-25 per form |
| $115 | ☐ | Counterclaim: Divorce/Sep Maint. |

| Fee | | Case Type |
|---|---|---|
| $115 | ☐ | Counterclaim: Custody/Visit/Support |
| $155 | ☐ | Counterclaim: Paternity/Grandparent Visitation |
| $100 | ☐ | Domestic Modification (T2) |
| $100 | ☐ | Counter-petition: Domestic Mod. |
| $360 | ☐ | Grandparent Visitation (T2) |
| $360 | ☐ | Paternity/Parentage (T2) |
| $310 | ☐ | Separate Maintenance (T2) |
| $35 | ☐ | Temporary Separation (E) |
| $35 | ☐ | Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA) (E) |
| $35 | ☐ | Uniform Interstate Family Support Act (UIFSA) (E) |
| | | ————— **JUDGMENTS** ————— |
| $35 | ☐ | Foreign Judgment (Abstract of) (E) |
| $50 | ☐ | Abstract of Judgment/Order of Utah Court/Agency (E) |
| $30 | ☐ | Abstract of Judgment/Order of Utah State Tax Commission (E) |
| $35 | ☐ | Judgment by Confession (E) |
| | | ————— **PROBATE** ————— |
| $360 | ☐ | Adoption/Foreign Adoption (T2) |
| $8 | ☐ | Vital Statistics §26-2-25 per form |
| $360 | ☐ | Conservatorship (T2) |
| $360 | ☐ | Estate Personal Rep (T2) |
| $35 | ☐ | Foreign Probate/Child Custody Doc. (E) |
| $360 | ☐ | Gestational Agreement (T2) |
| $360 | ☐ | Guardianship-Adult (T2) |
| $360 | ☐ | Guardianship-Minor (T2) |
| $35 | ☐ | Guardianship-Disabled Adult Child (T2) |
| $0 | ☐ | Involuntary Commitment (T2) |
| $360 | ☐ | Minor's Settlement (T2) |
| $360 | ☐ | Name Change (T2) |
| $360 | ☐ | Supervised Administration (T2) |
| $360 | ☐ | Trusts (T2) |
| $360 | ☐ | Unspecified (Other) Probate (T2) |
| | | ————— **SPECIAL MATTERS** ————— |
| $35 | ☐ | Arbitration Award (E) |
| $0 | ☐ | Determination Competency-Criminal (E) |
| $135 | ☐ | Expungement Petition (E) |
| $0 | ☐ | Hospital Lien (E) |
| $35 | ☐ | Judicial Approval of Document: Not Part of Pending Case (E) |
| $35 | ☐ | Notice of Deposition in Out-of-State Case/Foreign Subpoena (E) |
| $35 | ☐ | Open Sealed Record (E) |
| $50 | ☐ | Petition for Adjudication of Priority to Funds on Trustee's Sale |